**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TIMOTHY C. MORRIS,

      Plaintiff,

  v.                                                                          Civil Action No. 12-01800 (CKK)

CARTER GLOBAL LEE, INC.,

      Defendant.

**MEMORANDUM OPINION**
(November 5, 2013)

      Plaintiff Timothy C. Morris ("Morris" or "Plaintiff") brings this action *pro se* against Defendant Carter Globle Lee, Inc. ("CGL" or "Defendant")[1], asserting a variety of claims arising out of the termination of Plaintiff's employment with CGL. Currently before the Court is Defendant's [12] Rule 12(b)(6) Motion to Dismiss. Upon consideration of the pleadings[2], the relevant legal authorities, and the record as a whole, the Court GRANTS-IN-PART AND DENIES-IN-PART Defendant's [12] Rule 12(b)(6) Motion to Dismiss. All of Plaintiff's claims, with the sole exception of his claim pursuant to 42 U.S.C. § 1981, are dismissed without prejudice.

---

[1] Defendant states that it has been incorrectly named by Plaintiff as "Carter Global Lee, Inc."
[2] Pl.'s Verified Amended Compl. for Violation of Civil and Human Rights, Intentional Infliction of Emotional Distress, False Accusations Plaintiff, Fraud, and Wrongful Firing, ECF No. [10] ("Am. Compl."); Def.'s Rule 12(b)(6) Mot. to Dismiss, ECF No. [12] ("Def.'s MTD"); Def.'s Mem. of P. & A. in Supp. of its Rule 12(b)(6) Mot. to Dismiss, ECF No. [13] ("Def.'s Mem."); Pl.'s Mem. of P. & A. in Opp'n to Def.'s Rule 12(b)(6) Mot. to Dismiss, ECF No. [18] ("Pl.'s Opp'n"); Def.'s Mem of P. & A. in Reply to Pl.'s Opp'n to Def.'s Rule 12(b)(6) Mot. to Dismiss, ECF No. [20] ("Def.'s Reply").

# I. BACKGROUND

## A. Factual Background

The following facts are taken from the Plaintiff's Amended Complaint and the materials attached thereto and must be accepted as true for purposes of a motion to dismiss. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). On or about February 23, 2009, Plaintiff was employed by Defendant as a plumber at the District of Columbia Jail. Am. Compl. ¶¶ 2, 5. Plaintiff is a licensed master plumber in the District of Columbia, and was hired in this capacity by Defendant CGL, which had a contract to provide plumbing services for the District of Columbia Department of Corrections. *Id.* at ¶¶ 2, 3. However, on February 23, 2009, Plaintiff's employment with CGL was terminated. *Id.* at ¶ 9. According to Plaintiff, his supervisor informed him that the Jail's Warden had ordered CGL to fire him. *Id.* The precipitating event for Plaintiff's termination was his allegedly negligent action in shutting off the valves controlling the Jail's heating system. *Id.* at ¶¶ 8-9. Plaintiff claims that a supervisor employed by Defendant confronted him on the morning of February 23, 2009 and accused him of sabotaging the heating system. *Id.* at ¶ 14. Plaintiff contends that he did not commit any misconduct, noting that in his final check of the heating system before termination he made sure each floor of the Jail was receiving the proper heat. *Id.* at ¶ 5. He alleges that Defendant terminated him without providing any proof of his wrongdoing. *Id.* at ¶ 14. He further states that he was humiliated by the termination, which resulted in his being asked to return his keys and ID badge and being escorted out of the building for his alleged misconduct. *Id.* at ¶ 6.

Plaintiff subsequently applied for unemployment compensation, which he was denied on March 19, 2009 on the basis of the alleged misconduct that led to his termination. *Id.* at ¶ 11, Notice of Benefit Determination. Plaintiff appealed this decision, and after Defendant failed to

participate in a hearing on May 30, 2009, the Unemployment Board awarded Plaintiff unemployment compensation. *Id.*, Affidavit of Timothy Morris ¶ 7.

On July 28, 2009, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights alleging that in terminating him, Defendant had "discriminated against [him] because of [his] race (Black American) and age (54), in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*, Charge of Discrimination. On August 27, 2009, the EEOC sent Plaintiff a Dismissal and Notice of Rights. *Id.*, Dismissal and Notice of Rights. This document informed Plaintiff that the EEOC was closing its file on his charges of discrimination because "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violation of the statutes." *Id.* The Dismissal and Notice of Rights further informed Plaintiff of his right to file a lawsuit on his claims of discrimination under Title VII, noting that "[y]our lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost." *Id.*

### B. Procedural History

Plaintiff initially filed suit against Defendant on May 29, 2012 in the Superior Court of the District of Columbia alleging wrongful termination and violation of his civil rights. *See* Notice of Removal, ECF No. [1]. On November 5, 2012, Defendant removed this matter to this Court on the basis of federal question jurisdiction. *Id.* On the same day, Defendant filed its [3] Rule 12(e) Motion for More Definite Statement, which the Court granted on the grounds that Plaintiff's Superior Court Complaint lacked any discussion of the legal basis for his claims. *See* Order of Feb. 18, 2013, ECF No. [9]. Pursuant to this Court's Order, on March 11, 2013, Plaintiff filed his [10] Amended Complaint, which listed five purported claims against

Defendant: (1) Violation of Civil and Human Rights; (2) Intentional Infliction of Emotional Distress; (3) False Accusations; (4) Fraud; (5) Wrongful Firing. Subsequently, Defendant filed its [12] Rule 12(b)(6) Motion to Dismiss, contending that Plaintiff's allegations fail to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine*

*Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C.1994). Further, in deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (citations omitted).

A defendant may raise the affirmative defense of statute of limitations in a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *See Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C.Cir.1998). The court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.*; *Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C.Cir.1985).[3]

### III. DISCUSSION

Defendant argues that all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6). The Court agrees with Defendant as to all of Plaintiff's claims, *except* for his claim under 42 U.S.C. § 1981. The sufficiency of each of Plaintiff's claims is addressed below.

### A. Plaintiff's Claim that Defendant Violated His Civil and Human Rights

Plaintiff alleges that CGL has violated his "civil and human rights under the 14th Amendment of the U.S. Constitution and 42 U.S.C. §[§] 1881-1885 [sic]; 18 U.S.C. §[§] 241-

---

[3] In his Opposition, Plaintiff argues that the Court should treat Defendant's Rule 12(b)(6) motion as a motion for summary judgment under Fed. R. Civ. P. 56. Pl.'s Opp'n at 3-4. While Fed. R. Civ. P. 12(d) does state that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", here, the Court has not considered materials outside the pleadings, except to note that such materials are not properly considered on a motion to dismiss. Accordingly, conversion of Defendant's motion is not required. *See McKinney v. Dole*, 765 F.2d 1129, 1134 (D.C. Cir. 1985), *abrogated on other grounds by Stevens v. Dep't of Treasury*, 500 U.S. 1, 11, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991) (conversion required under Rule 12(d) only where "[d]istrict [c]ourt considered materials outside the pleadings in dismissing the case.").

241, 28 U.S.C. § 1443, and Title VII of the Civil Rights Act of 1964." Am. Compl. ¶ 14. For the reasons stated below, with the exception of Plaintiff's claim under 42 U.S.C. § 1981, none of these contentions present a cognizable claim for relief.

### 1. Plaintiff's Constitutional Claims and 42 U.S.C. § 1983

Although Plaintiff invokes a bevy of statutes in support of his claim that Defendant violated his "civil and human rights" under the Fourteenth Amendment, the factual basis for his claim is his allegation that he was fired by Defendant based on unsubstantiated accusations against which he was never given the opportunity to defend himself. Am. Compl. ¶ 14. By summarily firing him, Plaintiff contends, CGL deprived him of his economic livelihood without an opportunity to be heard in violation of the Due Process Clause. *Id.*

Defendant contends that Plaintiff's allegation that CGL "violated Plaintiff's civil and human rights" "is so vague and ambiguous that CGL cannot reasonably determine under which legal theory, if any, Plaintiff is seeking a judgment against CGL." Def.'s Mem. at 3. The Court disagrees. Although Plaintiff does not clearly state that he brings his claim under the procedural component of the Due Process Clause and instead names a slew of statutory provisions in addition to the Fourteenth Amendment, the allegations in his complaint are sufficient to place Defendant on notice of Plaintiff's procedural due process claim. Plaintiff alleges that he was deprived of his economic livelihood without the opportunity to defend himself against the false accusations that led to his firing. Such action, Plaintiff contends, violates the Due Process Clause of the Fourteenth Amendment.

Yet, although Plaintiff has made clear at least one legal basis for his claim of "violation of civil and human rights", the Court nevertheless concludes that this claim is not proper. Even putting aside the question of whether CGL's termination of the Defendant constitutes state action

subject to scrutiny under the Fourteenth Amendment, a question the Court does not address but notes some skepticism regarding[4], Plaintiff's claim alleging a violation of his procedural due process rights is barred by the statute of limitations. Claims for damages for violations of procedural due process rights are brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for remedying constitutional violations by state actors generally, including deprivations of procedural due process rights.[5] *See, e.g. Rendell-Baker v. Kohn*, 457 U.S. 830, 834-35, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (plaintiff alleging that she had been discharged in violation of her procedural due process rights under the Fourteenth Amendment brought suit under § 1983). Here, Plaintiff's claim for violation of his due process rights plainly falls outside the applicable statute of limitations for § 1983 actions.

"Section 1983 sets no limitations period." *Earle v. District of Columbia*, 707 F.3d 299, 304 (D.C. Cir. 2012). Rather, the appropriate statute of limitations for a § 1983 claim "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Ownes v. Okure*, 488 U.S. 235, 249-50, 109 S.Ct.

---

[4] "Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be." *National Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). In drawing the line between state and private action, the Supreme Court has cautioned that "state action may be found if, [and] only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

[5] The Court notes that Plaintiff appears to have invoked 42 U.S.C. § 1983, through his reference to 42 U.S.C. §[§] 1881-1885 [sic], as a separate basis for relief from his claims under the Fourteenth Amendment. Yet because § 1983 provides the statutory cause of action through which Plaintiff can seek to remedy the violation of his constitutional rights, the Court considers Plaintiff's claims under the Constitution and § 1983 together.

573, 102 L.Ed.2d 594 (1989). Pursuant to this direction, the D.C. Circuit has applied the District of Columbia's three-year residual statute of limitations for tort claims to § 1983 claims. *See Earle*, 707 F.3d at 305 (citing *Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003).

However, while the statute of limitations for a § 1983 claim is a matter of state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in original). A § 1983 claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, 'when the plaintiff can file suit and obtain relief.'" *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). *See also Munos v. Bd. of Trs. Of Univ. of Dist. Of Columbia*, 427 Fed. Appx. 1, 4 (D.C. Cir. 2011) (per curiam) (§ 1983 claim accrues when wrongful conduct occurs).

Accordingly, the statute of limitations on Plaintiff's § 1983 claim alleging a violation of his due process rights began to run when Plaintiff had "a complete and present cause of action" and could "file suit and obtain relief." *Bay Area Laundry*, 522 U.S. at 201 (citations omitted). The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). The three basic elements of a procedural due process claim are (1) a deprivation, (2) of life, liberty, or property, (3) without due process of law. *See EDF Resource Capital, Inc. v. U.S. Small Business Admin.*, 910 F.Supp.2d 280, 284 (D.D.C. 2010) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). Here, Plaintiff's claims for a violation of his procedural due process rights accrued at the time he was allegedly deprived of his employment

without due process of law – without notice of the reasons for his termination and an opportunity to contest them. Accordingly, Plaintiff's claim accrued on the date of his termination, February 23, 2009. Plaintiff did not bring suit in District of Columbia Superior Court on his claims until May 29, 2012, more than three years after the date his claim accrued. Therefore, pursuant to the three-year statute of limitations applicable to § 1983 claims in the District of Columbia, his claim for violation of his procedural due process rights is time-barred.

In his Opposition, Plaintiff contends that his claim is not barred by the statute of limitations because he was not aware of the reasons for his termination until "he was informed of it at the hearing before the Unemployment Insurance Appeal Board on or about May 29, 2009." Pl.'s Opp'n at 7. He argues that the time for filing his action did not accrue "until the date he became aware of the actual charges against him." *Id.* This statement is both legally and factually inaccurate. As an initial matter, Plaintiff's claim that he only learned of the reasons for his termination at the Unemployment Insurance Appeal Board meeting on or about May 29, 2009 appears nowhere in the Amended Complaint or any of the materials filed by the Defendant in Superior Court. Rather, the Amended Complaint contradicts this statement, making clear that Plaintiff knew of the reasons for his dismissal on the day of his termination. In his Amended Complaint, Plaintiff alleges that, before firing Plaintiff, his supervisor attempted on three occasions to get him to admit that he had turned off the heating system, and that he was "charged with gross-misconduct and sabotage of the heating system . . . ." Am. Compl. at ¶ 10. *See also id.* at ¶ 14 ("CGL confronted Morris on February 23, 2009 and accused him of sabotaging the heating system."). Moreover, even accepting Plaintiff's allegations that he did not learn the true reasons for his firing until May 29, 2009, these facts are legally irrelevant. The harm alleged by a plaintiff in a procedural due process claim is the loss of life, liberty, or property *without* notice

and an opportunity to be heard. What matters is that Plaintiff was allegedly deprived of notice and an opportunity to be heard at the time of his deprivation. Any claim that Plaintiff learned the "true" reasons for his firing months after his termination is immaterial. His cause of action became complete at the moment of his alleged deprivation without due process. Accordingly, because the statute of limitations began to run on the date of Plaintiff's termination, his procedural due process claim is time-barred and must be dismissed pursuant to Rule 12(b)(6).

### 2. Plaintiff's Claims Under 42 U.S.C. §§ 1981, 1982, 1984, and 1985

Plaintiff next attempts to find relief pursuant to various other provisions of Title 42 of the U.S. Code. Although Plaintiff cites to 42 U.S.C. §§ 1881-1885, the Court presumes that he intended to refer to 42 U.S.C. §§ 1981-1985, as the former sections concern the National Science Foundation. With the exception of § 1981, Plaintiff has failed to state a claim for relief pursuant to these provisions.

Pursuant to 42 U.S.C. § 1981, all persons "have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. " This provision has been interpreted to forbid all racial discrimination in the making of private and public contracts, including employment contracts. *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Accordingly, Defendant's argument that Plaintiff's § 1981 claim is barred by the state action doctrine is misplaced. *See Runyon v. McCrary*, 427 U.S. 160, 173, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (concluding that § 1981 reaches private conduct). As amended by the Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1071, § 1981 "ensure[s] that Americans may not be harassed, *fired*, or otherwise discriminated against in contracts because of their race." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008) (quoting S.Rep. No. 101-315, p.6 (1990)). *See* 42 U.S.C. § 1981(b) (defining "make

and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

A viable "claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights," and whether "racial discrimination blocks the creation of a contractual relationship [or] impairs an existing contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006). To state a claim for racial discrimination under § 1981, a plaintiff "must allege that (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned an activity enumerated in § 1981." *Mazloum v. Dist. of Columbia Metro. Police Dep't*, 522 F.Supp.2d 24, 37 (D.D.C.2007) (quotations omitted). As the Supreme Court has emphasized, § 1981 "can be violated only by purposeful discrimination." *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). "In order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief. Rather, plaintiff must allege some facts that demonstrate that his race was the reason for defendant's action." *Bray v. RHT, Inc.*, 748 F.Supp. 3, 5 (D.D.C.1990) (internal citation omitted); *see also Alexander v. Wash. Gas Light Co.*, 481 F.Supp.2d 16, 31 (D.D.C.2006) ("Plaintiff, while stating . . . that he is African-American, has not pled any facts or made any suggestion of racially discriminatory motive on the part of Defendants. As such, Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1981.").

Here, Plaintiff has just barely met this requirement. Although Plaintiff's Amended Complaint contains no mention of his race or racial discrimination in the termination of his

employment contract, in considering a motion to dismiss under Rule 12(b)(6), the Court is permitted to look to "documents attached as exhibits or incorporated by reference in the complaint . . . ." *Ward*, 768 F.Supp.2d at 119 (citations omitted). Here, Plaintiff has attached to his Amended Complaint his Charge of Discrimination filed with the D.C. Office of Human Rights and presented to the EEOC. This document states, "On February 23, 2009, I was terminated for alleged gross misconduct. I believe I have been discriminated against because of my race (Black American) and age (54), in violation of Title VII of the Civil Rights Act of 1964, as amended." Although Plaintiff only invokes Title VII, this statement, again attached to his Amended Complaint, sets out all the allegations necessary for his claim under § 1981. He alleges that he is a member of a racial minority who was discriminated against on the basis of his race with respect to an action covered by § 1981 – the termination of his employment contract. Accordingly, Plaintiff's allegations are sufficient to survive Defendant's motion to dismiss with respect to his claim under 42 U.S.C. § 1981. "A court may not grant a motion to dismiss for failure to state a claim 'even if it strikes a savvy judge that . . . recovery is very remote and unlikely." *Atherton*, 567 F.3d at 681 (quoting *Twombly*, 550 U.S. at 556). "So long as the pleadings suggest a 'plausible' scenario to 'sho[w] that the pleader is entitled to relief,' a court may not dismiss." *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Defendant argues that Plaintiff's claim under § 1981 should be dismissed pursuant to the statute of limitations. *See* Def.'s Mem. at 5. In making this argument, Defendant fails to note that some § 1981 claims will be subject to a three-year limitations period; others, a four-year limitations period. This case happens to fall in the latter category. As this Court discussed at length in *Graves v. District of Columbia*, 777 F.Supp.2d 109, 115-116 (D.D.C. 2011):

[o]nce upon a time, federal courts faced with Section 1981 claims were directed to "select the most appropriate or analogous state statute of limitations," whatever the nature of the claim, *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), which in the case of the District of Columbia was indeed a three-year statute of limitations, *Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C.Cir.1998). But that landscape changed somewhat with the enactment of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, which added a new subsection to Section 1981—subsection (b)—expanding Section 1981 to reach a universe of post-contract-formation conduct that was previously non-actionable. *Compare Patterson v. McLean Credit Union*, 491 U.S. 164, 177, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (concluding that the pre-amendment Section 1981 did not cover "postformation conduct . . . implicat[ing] the performance of established contract obligations and the conditions of continuing employment . . . ."), *with* 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."). Because the amendment to Section 1981 brought about by the Civil Rights Act of 1991 was an expansion and not a clarification of existing law, *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), some conduct will arise under the pre-amended Section 1981—subsection (a)—and some conduct will arise under post-amendment Section 1981—subsection (b). The distinction is critical in identifying the applicable statute of limitations: if a claim arises under subsection (a), then the district court must select the most appropriate or analogous state statute of limitations; but if a claim arises under subsection (b), then the four-year "catch-all" statute of limitations for any claim arising under a federal statute enacted after December 1, 1990 is triggered. See 28 U.S.C. § 1658(a).

Here, Plaintiff's claim relating to racial discrimination in the termination of his employment contract involves the sort of post-contract-formation conduct that was not covered by § 1981 until Congress enacted the Civil Rights Act of 1991. In other words, his claim arises under subsection (b) and the four-year statute of limitations applies. Plaintiff commenced the instant action on May 29, 2012, meaning that his claim under § 1981 must have accrued on or after May 29, 2008 in order to be timely filed. Plaintiff's § 1981 claim arises out of his termination on February 23, 2009 and is accordingly timely filed.

The remaining provisions of Title 42 invoked by Plaintiff, however, provide no relief. The next provision invoked by Plaintiff, 42 U.S.C. § 1982, is irrelevant to his claims, as it

provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Plaintiff makes no allegation anywhere in his Amended Complaint or in the attached documents that he has been deprived of his rights in real or personal property on the basis of his race. Next, Plaintiff clearly has no possible claim under 42 U.S.C. § 1984 as this provision has been omitted from the U.S. Code.

Finally, Plaintiff does not allege a cognizable claim under 42 U.S.C. § 1985, which prohibits conspiracies that interfere with civil rights.[6] As part of this provision, § 1985(3) prohibits conspiracies to deprive any person of equal protection of the laws. "A plaintiff suing under § 1985(3) must allege four elements: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of privileges and immunities under the law; (3) motivated by some class based, invidiously discriminatory animus []; (4) whereby a person is either injured in his person or property, or is deprived of any right or privilege of a citizen of the United States." *Graves v. United States*, 961 F.Supp. 314, 320 (D.D.C. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971)). Yet Plaintiff's Amended Complaint and the supporting materials contain no allegations of a conspiracy to deprive him of his rights. In order for there to be a conspiracy, there must be "an agreement to take part in an unlawful action . . . ." *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002). Here, Plaintiff's pleadings contain nothing that would indicate Defendant is liable under § 1985(3). In his Opposition, Plaintiff mentions a conspiracy to terminate him in violation of his civil rights for the first time, blithely stating that "[t]he essential

---

[6] Plaintiff does not specify which part of § 1985 he is suing under, but the Court presumes that it is § 1985(3), as the other subsections, addressing conspiracies to prevent an officer from performing his duties and conspiracies to obstruct justice, are clearly not applicable here.

elements for a conspiracy to terminate Morris [are] also present. Here, the act involved more than one person who participated in the termination. Pl.'s Opp'n at 6. Yet the mere fact that more than one person participated in the termination decision does not by itself indicate that there was a *racially-motivated agreement* made to terminate Plaintiff in violation of his civil rights, and indeed, Plaintiff has made no such allegation in his Amended Complaint or the supporting documents. Accordingly, Plaintiff's allegations are plainly insufficient to support his claim under § 1985.

### 3. Plaintiff's Title VII Claim

Plaintiff's claim under Title VII of the Civil Rights Act is similarly subject to dismissal pursuant to Rule 12(b)(6). Title VII provides that a plaintiff must bring suit within 90 days of receipt of a dismissal of his or her complaint by the Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-16(c) ("[w]ithin 90 days of receipt of notice of final action taken by a department, agency . . . or by the Commission . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint . . . may file a civil action. . . ." The ninety-day time limit from the date of receipt "functions like a statute of limitations." *Wiley v. Johnson*, 436 F.Supp.2d 91, 96 (D.D.C. 2006). "When the date that a right-to-sue notice was received is unknown or disputed, courts routinely presume that the notice was received either three days or five days after it was mailed." *Mack v. WP Co., LLC*, 923 F.Supp.2d 294, 299 (D.D.C. 2013).

Here, the Equal Employment Opportunity Commission's "Dismissal and Notice of Rights" concerning Plaintiff's Claim of Discrimination was issued and mailed on August 27, 2009. The Dismissal and Notice of Rights stated that Plaintiff's Title VII "lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will

be lost." Yet Plaintiff did not file his suit alleging a violation of Title VII until almost three years later on May 29, 2012. Accordingly, regardless of whether Plaintiff received this notice three or five days after its mailing, his claim is clearly time-barred, as it falls well outside the ninety-day window provided for suit. Furthermore, Plaintiff's *pro se* status does not create an excuse for his delay in filing suit. "The mere fact that a plaintiff is representing [him]self 'does not render [him] immune from the ninety-day requirement.'" *Horsey v. Harris*, No. 12-1457, 2013 WL 3649790, at *5 (D.D.C. July 16, 2013) (quoting *Anderson v. Local 201 Reinforcing Rodmen*, 886 F.Supp. 94, 97 (D.D.C. 1995). *See also Smith v. Dalton*, 971 F.Supp. 1, 2-3 (D.D.C. 1997) (barring a *pro se* litigant who missed the ninety-day deadline by one day).

Plaintiff does not challenge the specific text of the Dismissal and Notice of Rights. Indeed, he does not address this document. Rather, he argues that his Title VII claim is not time-barred because he "did not become aware of the full reasons for his termination until he was denied unemployment benefits for what amounted to misconduct." Pl.'s Opp'n at 8. Yet this argument is unavailing for a number of reasons. First, Plaintiff never explains what additional information he learned when his unemployment benefits were denied. As discussed, *supra*, Plaintiff was informed that Defendant had fired him for alleged misconduct at the time of his termination. Furthermore, Plaintiff was denied unemployment benefits on March 19, 2009. Yet Plaintiff did not file his charge of discrimination with the EEOC until July 28, 2009. Accordingly, even if Plaintiff is correct that he did not become aware of the full reasons for his termination until he was denied unemployment benefits, this event still occurred well before the filing of his charge of discrimination with the EEOC, and even further before the EEOC's Dismissal and Notice of Rights. In light of these facts, Plaintiff provides no support for the conclusion that the ninety-day time limit for suit in the EEOC's Dismissal and Notice of Rights

is somehow inapplicable here.  Therefore, Plaintiff's Title VII claim is also dismissed as time-barred.

### 4.  Plaintiff's Remaining Claims under 18 U.S.C. §§ 241-242 and 28 U.S.C. § 1443

Plaintiff attempts to assert a claim of criminal conspiracy against CGL pursuant to 18 U.S.C. §§ 241-242.  As discussed, *supra*, Plaintiff fails to specify any factual or legal basis for these allegations of conspiracy in his Amended Complaint.  However, even if Plaintiff did provide sufficient allegations, he is still not entitled to sue to enforce these federal criminal provisions.  *See Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (per curiam) ("Appellant attempts to assert a conspiracy claim under 18 U.S.C. §§ 241-242, but he has not shown that these criminal statutes provide a private cause of action."); *Sheehy v. Brown*, 335 Fed Appx. 102, 104 (2d Cir. 2009) ("To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action."); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (18 U.S.C. § 242 is a "criminal statute[] that do[es] not provide [a] private cause[] of action.").  *See generally Diamond v. Charles*, 476 U.S. 54, 64-65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (noting that private citizens cannot compel enforcement of criminal law).

Finally, Plaintiff alleges that his human and civil rights were violated pursuant to 28 U.S.C. § 1443.  However, this statute governs removal of an action to federal court and does not, standing alone, provide a cause of action for which relief can be granted.  Accordingly, any claim Plaintiff purports to bring pursuant to this statute is similarly dismissed.

**B.  Intentional Infliction of Emotional Distress**

Plaintiff's claim for intentional infliction of emotional distress is similarly dismissed pursuant to Rule 12(b)(6).  "To establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).  "There is no general duty of care to avoid causing mental distress, and liability is not imposed for all conduct which causes mental distress." *Duncan v. Children's Nat. Medical* Center, 702 A.2d 207, 211 (D.C. 1997).  Rather, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n. 10 (D.C. 1994) (quoting Restatement (Second) of Torts § 46, cmt. h (1965)).  Indeed, "a case of intentional infliction of emotional distress is made out only if 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting Restatement, § 46, cmt. d).  Moreover, "the defendants' actions must proximately cause the plaintiff emotional upset of so acute a nature that harmful physical consequences [are likely] . . . to result." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (internal quotation marks omitted).

District of Columbia courts "have been exacting as to the proof required to sustain such claims in an employment context." *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (internal quotation marks omitted).  "[G]enerally, employer-employee conflicts do not rise to the level of outrageous conduct." *Duncan*, 702 A.2d at 211-12.  For example, in *Crowley v. North Am. Telecomm. Ass'n.*, 691 A.2d 1169 (D.C. 1997), the plaintiff alleged that

his supervisor terminated him and then defamed him to his former co-workers, allegedly causing him to suffer intentionally inflicted emotional distress. *See id.* at 1171 ("[Plaintiff] . . . alleged in his complaint that . . . [his supervisor] told his employees and former co-workers that an empty bullet casing had been found in the hallway which was probably left by [plaintiff] and that this caused injury to his business and personal reputation."). The District of Columbia Court of Appeals affirmed the dismissal of the plaintiff's complaint, stating that "[s]uch circumstances are not the type for which liability may be imposed for this particular tort." Similarly, in *Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997), that court held that allegations that an employer manufactured evidence to establish a claim of sexual harassment against an employee, demoted him, and leaked the information to other employees did not 'rise to the level of outrageous conduct' necessary to state a claim for intentional infliction of emotional distress. "This conduct, even construed as true, was of the type attributable to 'employer-employee conflicts [that] do not, as a matter of law, rise to the level of outrageous conduct." *Id.* (quoting *Howard v. Best*, 484 A.2d 958, 986 (D.C. 1984)). *See also Williams v. District of Columbia*, 9 A.3d 484, 493-94 (D.C. 2010) (employee discharged for whistleblowing failed to state a claim for intentional infliction of emotional distress based on allegations that former employer falsely stated that plaintiff had been terminated for embezzlement).

Here, Plaintiff's allegations plainly do not rise to the level of severe and outrageous conduct. Plaintiff bases his claim for intentional infliction of emotional distress on his allegations that Defendant falsely accused him of turning off the heating system at the District of Columbia jail and then "deprived him of his dignity and humiliated Plaintiff by walking him off the job site as if he had deliberately interfered with the health and welfare of the jail inmates." Am. Compl. ¶ 14. While the Court can understand the indignity and humiliation Plaintiff alleges

that he suffered in being discharged, it nevertheless concludes that Defendant's alleged actions do not constitute "conduct which exceeds all bounds of decency [or] acts which are regarded as 'atrocious and utterly intolerable in a civilized community." *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980) (citation and internal quotation marks omitted). Rather, they represent the sort of employer-employee conflicts that the District of Columbia Court of Appeals has repeatedly concluded do not state a claim for intentional infliction of emotional distress. As in previous cases, "[e]ssentially, [Plaintiff] alleges only that he was subjected to contempt, scorn, and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory." *Crowley*, 691 A.2d at 1172. *See also Waldon*, 415 A.2d at 1076 (Liability "does not extend to mere insults, indignities [and] threats . . . .").

### C. Plaintiff's Claim for False Accusations

Plaintiff alleges that "Defendant falsely accused Plaintiff of sabotaging the heating system at the DC Jail and accused Plaintiff of repeated misconduct." Am. Compl. ¶ 18. Accordingly, he argues, "CGL is guilty of stating false accusations against Morris." *Id.* However, there is no cause of action in the District of Columbia for false accusations. *See Hobley v. Wachovia Corp.*, 275 Fed. App'x. 16, 17 (D.C. Cir. 2008) (per curiam) ("There are, however, no causes of action in the District of Columbia for 'false accusation, false information, false prosecution, and frame-up.'").

Recognizing the lack of an applicable cause of action, in his Opposition, Plaintiff states that there is a "related cause of action for 'tortuous interference' with employment contracts which is applicable here." Pl.'s Opp'n at 11. Yet, Plaintiff, in spite of his *pro se* status, is not entitled to raise new claims for the first time in an opposition to a motion to dismiss. *See*

*Williams v. Spencer*, 883 F.Supp.2d 165, 181 n. 8 (D.D.C. 2012) ("Where the amended complaint does not make a claim, plaintiff cannot add a new claim through an opposition brief."); *Mazloum v. District of Columbia*, 442 F.Supp.2d 1, 12 n. 7 (D.D.C. 2006) ("the amended complaint, as currently drafted, does not make such a claim, and plaintiff cannot further amend his complaint through an opposition brief.").  Moreover, even ignoring this fact, Plaintiff's Opposition provides no legal theory or factual basis to support this claim, other than simply mentioning "tortuous interference."  Furthermore, though the Court is left to guess at what argument Plaintiff would make, presumably it involves interference with Plaintiff's employment contract by his employer.  Under District of Columbia law, such claims are generally not cognizable. *See Morris v. Buvermo Properties, Inc.*, 510 F.Supp.2d 112, 120 (D.D.C. 2007) ("Generally speaking, an employer cannot be held liable for interfering with a contract with its own employee."); *McManus v. MCI Communications Corp.*, 748 A.2d 949, 958 (D.C. 2000) (noting that it is "axiomatic that an employer cannot interfere with its own contract").  Accordingly, the Court concludes that Plaintiff's Claim for False Accusations is dismissed pursuant to Rule 12(b)(6).

### D.  Fraud

Plaintiff next alleges fraud, contending in his Amended Complaint that "CGL sought to intentionally damage Morris and to fire Plaintiff by accusing him of sabotaging the heating system.  Defendant without any proof stated that Morris's supervisor found the heating valves closed when Morris stated that he checked the system and found everything in worked [sic] order.  CGL's actions are consistent with fraud."  Am. Compl. ¶ 20.

To succeed on a claim for fraud, the Plaintiff must establish: (1) that the defendant made a false representation or willful omission of a material fact; (2) that the defendant had knowledge

of the misrepresentation or willful omission; (3) that the defendant intended to induce the plaintiff to rely on the misrepresentation or willful omission; (4) that the plaintiff actually relied on that misrepresentation or willful omission; and (5) that the plaintiff suffered damages as a result of her reliance. *Schiff v. Am. Ass'n of Retired Persons,* 697 A.2d 1193, 1198 (D.C.1997). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Accordingly, a complaint must "state the time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). Plaintiffs must also "identify individuals allegedly involved in the fraud."  *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

Here, Plaintiff's brief allegations of fraud fail to satisfy this standard.  Indeed, in the Court's view, Plaintiff is merely seeking to fit the facts of his termination based on allegedly false accusations into the fraud cause of action.  But termination on disputed grounds does not constitute fraud, as shown by the poor fit between Plaintiff's factual allegations and the elements of the cause of action.  Even assuming that Defendant misrepresented the material fact of Plaintiff's misconduct, Plaintiff has not alleged that Defendant sought to induce his reliance on this fact or that Plaintiff actually relied on this fact to his detriment.  Rather, Plaintiff, by his own admission, *never* relied on this alleged misstatement, which he has disputed as false from the very moment of his termination.  *See* Am. Compl. ¶¶ 5, 8, 14.  Accordingly, Plaintiff has failed to allege a claim for fraud, and this claim is dismissed pursuant to Rule 12(b)(6).

### E.  Wrongful Termination

Finally, Plaintiff contends that he was fired "without due process of law and without any justifiable reason."  Am. Compl. ¶ 14.  In the District of Columbia, at-will employment is presumed, *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 816 (D.C. 1991), and the general rule is that at-will employees can be terminated from employment for any reason or no reason at all, with or without cause or justification.  *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).  The few narrow exceptions to this rule are grounded in considerations of public policy, such as when the sole reason for discharge is the employee's refusal to violate the law, as expressed in statute or municipal regulation.  *Carl v. Children's Hosp.*, 702 A.2d 159, 160.  *See also id.* at 162 (Terry, J., concurring) (concluding that "the recognition of any such exception must be firmly anchored either in the Constitution or in a statute or regulation which clearly reflects the particular 'public policy' being relied on.").

Here, Plaintiff has not alleged or provided any reason to suspect that his employment was not-at will.  Accordingly, even accepting all of Plaintiff's allegations as true, there is no general prohibition on CGL firing him without providing a reason.  Furthermore, Plaintiff has made no allegation that the reason for his discharge violates District of Columbia public policy as expressed in constitutional, statutory, or regulatory law.  Plaintiff alleges that he "was terminated in [sic] allegations that he committed a criminal act and/or misconduct.  Defendant was required to prove those allegations in order to protect Plaintiff's civil rights."  Pl.'s Opp'n at 13.  Merely firing an employee based on alleged misconduct or violation of criminal law does not raise the sort of public policy concerns identified by the District of Columbia Court of Appeals in its decisions setting out narrow exceptions to the at-will doctrine.  In defining the scope of these exceptions, that court has cautioned future courts to "consider seriously only those arguments

that reflect a clear mandate of public policy, i.e., those that make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Carl*, 702 A.2d at 164. Here, Plaintiff has made no such showing, and to the extent Plaintiff attempts to argue for a public policy exception which would require giving him an opportunity to contest his termination based on the Due Process Clause of the Fourteenth Amendment, the Court declines to create such an extension. Creating this new public policy exception would render the at-will doctrine a nullity, as *all* employers would be required to provide *all* terminated employees notice and an opportunity to be heard in *all* cases. This would hardly be in keeping with the "narrow exception" that the District of Columbia Court of Appeals has carved out to the at-will rule. Accordingly, Plaintiff's claim for wrongful discharge is dismissed.

Furthermore, even if Plaintiff could state a claim for wrongful firing, his claim would be time-barred. Plaintiff's claim is subject to the three-year statute of limitations reserved for claims for "which a limitation is not otherwise specifically provided." D.C. Code § 12-301(8). Here, Plaintiff brought suit on May 29, 2012, more than three years after the date of his termination – the point at which he was allegedly terminated without any justifiable reason. As discussed, *supra*, Plaintiff's argument that the statute of limitations did not begin to run until he discovered the true reasons for his firing at his Unemployment Hearing, Pl.'s Opp'n at 12, is unavailing. Plaintiff's Amended Complaint clearly states that he was made aware of the reasons for his firing at the time of his termination. *See* Am. Compl. ¶ 14 ("CGL confronted Morris on February 23, 2009 and accused him of sabotaging the heating system.").

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS-IN-PART AND DENIES-IN-PART Defendant's [12] Motion to Dismiss.  All of Plaintiff's claims, with the sole exception of his claim pursuant to 42 U.S.C. §1981 are hereby dismissed without prejudice.  An appropriate Order accompanies this Memorandum Opinion.

Dated: November 5, 2013

    /s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge